**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO**

**Civil Action No.: 1:23-cv-153**

**AMGUARD INSURANCE COMPANY**

**Plaintiff,**

**v.**

**HAAG GLOBAL INC.**

And

**JASON PLASTERS**

**Defendants.**

---

**DEFENDANT HAAG GLOBAL, INC.'S MOTION TO DISMISS**

---

COMES NOW, Defendant Haag Global Inc. ("Haag") by and through undersigned counsel and submits its Motion to Dismiss as follows:

## CONFERRAL

Undersigned counsel has conferred with Plaintiff's counsel regarding the present motion. Counsel specifically discussed whether the Complaint could be amended to allege facts supporting a legal claim. Given the nature of the arguments presented, Plaintiff confirmed that Plaintiff opposes the relief requested in the Motion.

## I. INTRODUCTION AND BACKGROUND

A July 5, 2019 hailstorm damaged the fifteen condominium buildings that comprise the LaGrange Condominium Association (the "HOA"). Plaintiff AmGuard Insurance Company ("AmGuard") insured the HOA at the time of the hailstorm and the HOA

submitted a claim for damages to AmGuard. Nearly two years later, AmGuard had paid only about 65% of the repair costs incurred by the HOA, to the HOA. On June 7, 2021 the HOA filed Larimer County District Court lawsuit 2021CV30417 against AmGuard for breach of contract, bad faith breach of insurance contract, and violation of C.R.S. §10-3-1115 (unreasonable delay or denial in payment of claim for benefits owed to a first-party claimant) (the "Bad Faith Lawsuit"). The HOA asserted that on July 17, 2020 it submitted fifteen proofs of loss to AmGuard demonstrating $1,009,340.47 in repair costs actually incurred by the HOA; that the HOA completed the repair work and made multiple requests to AmGuard for the release of the recoverable depreciation in order to pay the remaining balance to the HOA's contractor; and that even though AmGuard acknowledged and agreed that the cost to restore the property to its pre-loss condition was $1,009,340.47, AmGuard still refused to pay that amount to the HOA. *Bad Faith Lawsuit*, Exhibit A, ¶¶ 7, 8, 11, 15.

The Bad Faith Lawsuit is the LaGrange lawsuit referenced by AmGuard in its Complaint in the present litigation, AmGuard v. Haag Global Inc. and Jason Plasters, USDC Colorado 1:23-cv-00153-WJM-NRN ("Complaint"), at Paragraphs 39, 55, 66, and 76. Paragraphs 55, 66, and 76 specifically are Plaintiff's damages claim paragraphs, in which AmGuard asserts that as a result of Defendants' collective asserted professional negligence, negligent misrepresentation, and breach of duty of good faith and fair dealing, AmGuard suffered "additional damages and claims paid to LaGrange and for attorney's fees and other litigation costs resulting from" the Bad Faith Lawsuit. The Bad Faith Lawsuit is referenced in the Complaint, it is central to Plaintiff's claims, and may properly be considered by the Court in the context of the present Motion. *Burke v. Holdman*, 750 F. App'x 616, 620 (10th Cir. 2018).

Plaintiff's Complaint alleges that as part of its efforts to adjust the LaGrange claims, AmGuard retained Haag to inspect the hail loss and provide an estimate of damages if hail loss was found. *Complaint*, ¶16-17. An engagement letter was issued by Haag for the work. *Id.,* ¶ 19. Defendant Jason Plasters wrote estimates for repairs to the fifteen properties, which were provided to AmGuard on March 25, 2020. *Id.,* ¶ 24. AmGuard claims that by copying Defendant Plasters on a July 10, 2020 email to the HOA, stating that Defendant Plasters would "address requests from LaGrange's contractor to add

certain items to the estimate and to review the requests with the contractor," it was authorizing and directing Haag to perform that work. *Id.,* ¶¶ 27, 32. The Complaint iterates a series of communications and alleged delays by Defendant Plasters in addressing the LaGrange contractor concerns or providing a supplemental estimate for repairs. *Complaint*, ¶¶ 27-38. Nowhere does the Complaint identify that AmGuard received specific proof of loss forms from the HOA on July 17, 2020 demonstrating the HOA's actual repair costs, and that AmGuard failed and refused to respond to the HOA's requests for payment of depreciation under the policy upon completion of repairs. *Bad Faith Lawsuit* ¶¶ 8, 15.

The Complaint mischaracterizes AmGuard's malfeasance in adjustment of the claim by stating that the Bad Faith Lawsuit alleged "various delays in addressing the additional damages sought by LaGrange." *Complaint*, ¶ 39. This is incorrect. The Bad Faith Lawsuit alleged that the HOA submitted proofs of loss to AmGuard and that eleven months later AmGuard had "ignored" the HOA's "multiple requests" for the release of the recoverable depreciation under the policy. *Bad Faith Lawsuit* ¶11. Colorado statutory law is clear that the failure to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed is *per se* an unfair claim settlement practice in violation of insurance industry standards. *C.R.S.* § 10-3-1104(1)(h)(V), *TBL Collectibles, Inc. v. Owners Ins. Co*., 285 F. Supp. 3d 1170, 1203–04 (D. Colo. 2018). AmGuard was sued in the Bad Faith Lawsuit for its own unfair claim settlement practices and failure to affirm or deny coverage for proofs of loss submitted by its insured. The Complaint makes no mention of the proofs of loss because addressing the proofs of loss or making any determinations on the coverage available to the HOA was never within Haag's purview. Haag does not provide insurance adjusting services, it provides independent third-party repair estimates.

AmGuard does not have Article III standing to assert its claims and there is no legal basis upon which AmGuard may recover against Haag for AmGuard's damages incurred in the Bad Faith Lawsuit. There is no causal connection between Haag or Plasters allegedly repeatedly failing to address a request for information on a proposed damages estimate, made via a carbon copy on an email on July 10, 2020, and the AmGuard failure to make a coverage determination in response to proofs of loss

separately submitted to AmGuard a week later on July 17, 2020. If, for example, AmGuard had believed that Haag's estimate work was necessary to assist in a coverage determination, but was not receiving the services needed, then AmGuard could have terminated Haag and hired a different consultant so that AmGuard could timely provide a coverage determination and avoid the claims asserted against AmGuard in the Bad Faith Lawsuit. In that instance, AmGaurd could have sought to potentially recover the fees or costs already paid to Haag or incurred on the new consultant as damages. That is not what happened. AmGuard failed to make a coverage determination in response to submitted proofs of loss, that failure was an unfair claims settlement practice, and the insured filed the Bad Faith Lawsuit as a result. AmGuard and AmGuard alone is responsible to its insured for its failures. There is no available species of legal claims that support the Complaint's underlying premise, which is that Haag "caused" AmGuard to engage in bad faith claims handling and that Haag should be responsible for the damages arising from AmGuard's bad faith claims handling asserted in the Bad Faith Lawsuit.

In addition, and in the alternative, Colorado case law is clear that the economic loss rule bars Plaintiff's claims against Haag for professional negligence and negligent misrepresentation.

## II. <u>LEGAL STANDARDS</u>

### A. Standard of Review Under Fed. R. Civ. P. 12(b)(6)

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Genberg v. Porter*, 935 F. Supp. 2d 1094, 1104 (D. Colo. 2013) (citations omitted), *aff'd in part, appeal dismissed in part*, 13-1140, 2014 WL 1876246 (10th Cir. May 12, 2014) (unpublished). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face."' *Id.* at 1104-05 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

In ruling on a Rule 12(b)(6) motion to dismiss, a court "must accept all the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff." *Genberg*, 935 F. Supp. 2d 1105 (*quoting David v. City and County of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996)). The plaintiff "must include enough facts

to nudge his claims across the line from conceivable to plausible." *Id.* (*internal quotations omitted*). "Conclusory allegations are not sufficient to survive a motion to dismiss." *Id.* Further, this Court may consider documents "(1) referenced in a complaint that are (2) central to a plaintiff's claims, and (3) indisputably authentic when resolving a motion to dismiss without converting the motion to one for summary judgment." *Burke v. Holdman*, 750 F. App'x 616, 620 (10th Cir. 2018).

### B. Standard of Review Under Fed. R. Civ. P. 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) empowers a court to dismiss a lawsuit for lack of jurisdiction over the subject matter of the complaint, including a lack of standing under Article III to pursue claims. *Balle-Tun v. Zeng & Wong, Inc.*, No. 21-CV-03106-NRN, 2022 WL 1521767, at *2 (D. Colo. May 13, 2022). "When reviewing a facial attack on a complaint pursuant to Rule 12(b)(1), the Court accepts the allegations of the complaint as true." *Id. citing Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).

To establish standing under Article III of the United States Constitution, a plaintiff must demonstrate the following:

1) An injury in fact - an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical;
2) A causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court;
3) That it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992) (*internal quotations and citations omitted*)

## III. ARGUMENT

### A. There is no Causal Connection between Haag's Conduct and the Injury Asserted by AmGuard

To establish standing for the claims in this case, AmGuard must plead facts showing a "causal connection between the injury and the conduct complained of—the

injury has to be fairly traceable to the challenged action of the defendant." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992). The injury complained of by AmGuard is that it was sued in the Bad Faith Lawsuit. The Bad Faith Lawsuit allegations are that AmGuard breached its duties as an insurance carrier (breach of contract, bad faith breach of insurance contract, and violation of C.R.S. §10-3-1115) in the adjustment of the HOA claim by ignoring the HOA's proof of loss statements and refusing to release depreciation. In the *Skillett v. Allstate Fire & Cas. Ins. Co.* opinion, in the context of interpreting C.R.S. §10-3-1115 and C.R.S. §10-3-1116, the Colorado Supreme Court noted that it is the insurer and insureds that are the parties to an insurance policy; that it is the insurer which undertakes obligations under the policy, and it is the insurer that may be obligated to pay insurance benefits. *Skillett v. Allstate Fire & Cas. Ins. Co.*, 2022 CO 12, ¶ 16, 505 P.3d 664, 667. The court also noted that an individual employee of the insurer is not responsible for authorizing payment and that the action for unreasonable delay or denial of insurance benefits is triggered by a decision of the insurer, not the adjuster. *Id*. Just as an individual employee is not responsible for the insurance carrier's authorization of payment on a claim, neither is an independent consultant responsible for the insurance carrier's authorization for payment on a claim. The insurance carrier alone makes its coverage determinations and authorize or denies payment on the claim. These actions and inactions by AmGuard were the explicit basis for the Bad Faith Lawsuit. There is no case law in Colorado that suggests that an independent consultant can "cause" an insurance carrier to breach its obligations to its insured. For these reasons, Plaintiff has not pleaded facts demonstrating a causal connection between the injury and the and the defendant's conduct. As such, Plaintiff

does not have Article III standing to assert its claims and they must be dismissed pursuant to Rule 12(b)(1).

Additionally, Plaintiff fails to assert a claim pursuant to Rule 12(b)(6). Claims for negligence and breach of contract share the common element of causation. *Strock v. USA Cycling, Inc.*, No. 00-CV-2285-JLK, 2006 WL 1223151, at *6 (D. Colo. May 8, 2006). "To prove causation in Colorado, 'the plaintiff must show by a preponderance of the evidence that the injury would not have occurred but for the defendant's conduct.'" *Id.*, *quoting Kaiser Found. Health Plan of Colo. v. Sharp,* 741 P.2d 714, 719 (Colo.1987). "Mere speculation or possibility that the defendant's acts caused the plaintiff's injury does not show a probability of causation." *Id.* To plead causation, Plaintiff would need to allege facts demonstrating that AmGuard's injury (the Bad Faith Lawsuit) would not have occurred but for Haag's conduct. Plaintiff's Complaint does not do so; it contains no mention of AmGuard's own conduct or delays in the response to the HOA's proofs of loss. Instead, AmGuard offers *only* speculations or possibilities that Haag's alleged non-responsiveness to the AmGuard adjuster on revisions to the estimate is related in some manner to AmGuard's failure to respond to the proofs of loss or release depreciation to the HOA for actual repairs. These allegations do not meet the Rule 12(b)(6) pleading standard and for this reason the Plaintiff's Complaint must be dismissed.

**B. In the Alternative, Plaintiff's Professional Negligence and Negligent Misrepresentation Claims are Barred by the Economic Loss Rule**

Plaintiff's Complaint asserts only economic damages, for the damages, fees and costs incurred by Plaintiff in the Bad Faith Lawsuit. Under Colorado law, "[a] party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such breach absent an independent duty of care under tort law." *Town of Alma v. Azco Constr., Inc.*, 10 P.3d 1256, 1264 (Colo. 2000); *see also Level*

*3 Commc'ns, LLC v. Liebert Corp.*, 535 F.3d 1146, 1162 (10th Cir. 2008) (applying Colorado law relevant to the economic loss rule). "[T]he question of whether the plaintiff may maintain an action in tort for purely economic loss turns on the determination of the source of the duty [the] plaintiff claims the defendant owed." *Town of Alma*, 10 P.3d at 1262. "Contract obligations arise from promises the parties have made to each other, while tort obligations generally arise from duties imposed by law to protect citizens from the risk of physical harm or damage to their personal property." *A.C. Excavating v. Yacht Club II Homeowners Ass'n*., 114 P.3d 862, 865-66 (Colo. 2005). Specifically, a duty separately recognized under tort law is not independent if it is also implied in the parties' agreement. *A Good Time Rental, LLC v. First Am. Title Agency, Inc.*, 259 P.3d 534, 537 (Colo. App. 2011).

Plaintiff asserts that Haag's tort duties included obligations to put into place policies and procedures to manage and supervise Defendant Plasters' work. *Complaint*, ¶52. Plaintiff also asserts that Plasters made misrepresentations to AmGuard after Haag was retained to provide estimating services. *Complaint*, ¶60. These alleged tort duties – not to make misrepresentations after entering into the contract, and to timely complete the work assigned, acting with within accepted commercial practices – are subsumed within the implied duty of good faith and fair dealing. *Dream Finders Homes LLC v. Weyerhaeuser NR Co.*, 2021 COA 143, ¶ 66, 506 P.3d 108, 123, cert. denied, No. 22SC24, 2022 WL 4238209 (Colo. Sept. 12, 2022) (A duty to not make misrepresentations after a contract is formed is subsumed within the contract through the implied duty of good faith and fair dealing, and the duty of good faith and fair dealing requires parties to observe reasonable commercial standards of fair dealing in the trade as well as effectuate the intention of the parties or to honor their reasonable expectations.) *See also, Former TCHR, LLC v. First Hand Mgmt. LLC*, 317 P.3d 1226, 1232 (Colo. App. 2012) (Common law duties to refrain from fraud and to disclose material facts were subsumed within the contract's implied covenant of good faith and fair dealing); *Jorgensen v. Colo. Rural Props., LLC*, 226 P.3d 1255, 1259, n. 3 (Colo. App. 2010) ("An example of an implied contractual duty which may bar a tort claim under the economic loss rule is the implied covenant of good faith and fair dealing."); *Hamon Contractors, Inc. v. Carter & Burgess, Inc.*, 229 P. 3d 282, 293-94 (Colo. App. 2009)(The defendants' tort

duties to refrain from deliberate misrepresentation did not differ in any way from their express and implied contractual duties, which included the implied covenant of good faith and fair dealing).

Once a contractual duty is identified, it is improper to further analyze the existence of an independent tort duty in determining whether an economic loss may be recovered. *Parr v. Triple L & J Corp.*, 107 P.3d 1104, 1108 (Colo. App. 2004). For the foregoing reasons, Plaintiff's claims for professional negligence and negligent misrepresentation against Haag are barred by the economic loss rule and must be dismissed.

Additionally, the Complaint lacks any other fact allegations that would give rise to an independent duty of care to support a tort claim. For example, the Complaint confesses that Haag was only hired as a consultant and not as a contractor to provide physical construction services. *Compare, A.C. Excavating v. Yacht Club II Homeowners Ass'n, Inc.*, 114 P.3d 862, 869 (Colo. 2005)(Subcontractors have an independent tort duty to act without negligence in the construction of homes.)

## IV. CONCLUSION

For the reasons set forth above, Plaintiff AmGuard lacks Article III standing to assert its claims in this case. Plaintiff further fails to state plausible claims for relief against Defendant Haag for professional negligence, negligent misrepresentation, and breach of duty of good faith and fair dealing.

WHEREFORE, Defendant Haag Global, Inc. respectfully requests that this Court enter an Order as follows:

1) Dismissing Plaintiff's Complaint for lack of standing pursuant to Fed.R.Civ.P. 12(b)(1), or, in the alternative
2) Dismissing Plaintiff's claims for relief pursuant to Fed.R.Civ.P. 12(b)(6);
3) Awarding Defendant Haag its attorney's fees and costs incurred in conjunction with the present Motion; and
4) Granting Defendant Haag such other and further relief as the Court deems just and proper.

DATED this 30th day of March 2023

Respectfully submitted,

*/s/ Mary Kathryn Strauss*

Mary Kathryn Strauss, #38743
Maria Hope Conversa, #57909
GALVANIZE LAW GROUP, LLC
6145 Broadway, Suite 49
Denver, CO 80216
Phone: (303) 704 4585
kstrauss@galvanize.law;
mconversa@galvanize.law
***ATTORNEYS FOR DEFENDANTS HAAG GLOBAL, INC. and JASON PLASTERS***