IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-00153-NRN

AMGUARD INSURANCE COMPANY,

Plaintiff,

v.

HAAG GLOBAL INC., and
JASON PLASTERS,

Defendants.

---

## ORDER ON
## MOTIONS TO DISMISS (Dkt. ##32 & 33)

---

**N. REID NEUREITER**
**United States Magistrate Judge**

### Introduction.

This is a lawsuit, stemming from a lawsuit, stemming from a hailstorm. Plaintiff

AmGuard Insurance Company ("AmGuard") insured the LaGrange Condominium

Association (the "Condo Association") against certain risks, including hail damage. In

2019, the Condo Association suffered a loss due to hail. It reported the loss to

AmGuard. Defendant HAAG Global Inc. ("HAAG") is a company that provides forensic

engineering and other services, including with respect to damage from hail. AmGuard

retained HAAG to inspect the loss and provide a damage estimate. HAAG assigned its

employee, Defendant Jason Plasters, to do the inspection and provide the estimate.

AmGuard alleges that HAAG (through Plasters) failed to provide the requested

damages estimate (or supplemental estimate) for the property in a timely way. As a

result, AmGuard alleges it was delayed in adjusting the claim and making prompt payment to its insured.

As happens frequently in Colorado, AmGuard was then sued by its insured, the Condo Association, for unreasonable delay or denial of a claim. Ultimately, AmGuard had to pay approximately $750,000 in extra-contractual damages to the Condo Association, in addition to insurance payments for the damage from the hailstorm. AmGuard blames HAAG and Plasters for the delay associated with adjusting the claim and for the bad faith/unreasonable delay or denial lawsuit brought by its insured that AmGuard was then forced to defend.

HAAG and Plasters have moved to dismiss this suit.

**Procedural Background.**

The case was originally filed on January 18, 2023. *See* Dkt. #1. The First Amended Complaint was filed on April 14, 2023. *See* Dkt. #25. All Parties have consented to magistrate judge jurisdiction (*see* Dkt. #30) and this matter was referred for all purposes by Judge Williams J. Martinez on April 28, 2023. Dkt. #31.

Defendants moved to dismiss the First Amended Complaint on April 28, 2023. *See* Dkt. #32 (Motion to Dismiss by HAAG); Dkt. #33 (Motion to Dismiss by Plasters). AmGuard filed one opposition covering both motions. *See* Dkt. #36. Defendants then filed a single reply. *See* Dkt. #39. The Court heard argument on the motions on June 23, 2023. *See* Dkt. #40.

**Relevant Allegations from First Amended Complaint**

The following allegations are found in the Amended Complaint.

2

On July 5, 2019, the Condo Association suffered a loss due to hail at fifteen of its properties in Fort Collins, Colorado. At the time of loss, AmGuard insured the Condo Association with a policy period of August 23, 2018, to August 23, 2019. The Condo Association reported the loss to AmGuard's agent on November 15, 2019, and the agent reported the loss to AmGuard on November 19, 2019.

On November 25, 2019, six days after getting notice of the claim, AmGuard retained HAAG to inspect the claimed loss and provide estimating services. AmGuard alleges that it specifically requested that HAAG draft a repair estimate if damage was found. On December 4, 2019, HAAG sent AmGuard an engagement letter confirming it had accepted the assignment and acknowledging that the purpose of the work was to "**PROVIDE AN ESTIMATE FOR ANY DAMAGES FOUND**" (emphasis in original). There were no specific agreed-upon terms between HAAG and AmGuard concerning how, or by when, HAAG was to conduct the assignment, or how HAAG was to manage its employees handling the assignment.

On January 24, 2020, after 59 days of no contact, AmGuard followed up on the status of the assignment. On January 31, 2020, AmGuard received an inspection report but no damage estimate. AmGuard again requested that HAAG prepare an estimate. HAAG informed AmGuard that HAAG had assigned the task to Defendant Plasters. Plasters was an agent and an employee of HAAS and was acting within the course and scope of his agency. The First Amended Complaint specifically alleges that, to the extent that there was a contract between HAAG and AmGuard, Plasters was not a party to the agreement. Dkt. #25 ¶ 25.

On March 25, 2020, Plasters finally provided the initial estimates to AmGuard. On July 10, 2020, AmGuard requested that Plasters address requests from the Condo Association's contractor to add certain items to the estimate and to review the requests with the contractor. Also on July 10, 2020, AmGuard sent an email to the Condo Association with a carbon copy to Plasters stating that Plasters would address discrepancies in the estimate. This was repeated on July 29, 2020, but as of that date Mr. Plasters had contacted neither the Condo Association nor its contractor.

It is fair to say that the rest of the First Amended Complaint recites additional efforts by AmGuard to get Plasters to respond and to communicate with the Condo Association and AmGuard. AmGuard alleges that Plasters repeatedly (and falsely) stated that that he was completing or had completed a supplemental estimate, when in fact he had not done so. AmGuard followed up multiple times in January and February 2021 to obtain the supposed supplemental estimate. AmGuard alleges that on August 5, 2021, more than a year after the initial request to address the Condo Association's concerns, Plasters had still not produced a supplement. It was not until August 13, 2021, that Plasters finally sent in a supplemental estimate.

In the meantime, the Condo Association sued AmGuard on July 6, 2021, alleging unreasonable delay in making payments. In the instant lawsuit, AmGuard effectively claims that HAAG's delays throughout the claim adjustment process are what led to AmGuard being unable to fulfill its duties to its insured, causing the Condo Association's lawsuit against AmGuard. AmGuard says it relied to its detriment on Plasters' representations that a supplemental estimate was forthcoming, and that it was

4

reasonable for AmGuard to rely on Plasters' and HAAG's representations that the assignment would be completed in a timely manner.

On the issue of causation, the First Amended Complaint alleges,

As a direct and proximate result of Plasters and H[AAG]'s repeated delays and misrepresentations, AmGuard's ability to evaluate and adjust [the Condo Association]'s claim was impeded. This delay directly and proximately led to the following damages that AmGuard was required to pay: a. Additional damages to [the Condo Association]'s property; b. Additional claims for damages by [the Condo Association]; c. Additional exposure for bad faith damages; and d. Attorney's fees and other litigation costs resulting from [the Condo Association]'s lawsuit against AmGuard.

Dkt. #25 ¶ 51.

In short, AmGuard says it was delayed in its adjustment of the Condo Association's hail damage claim because of HAAG's and Plasters' negligence and contractual breaches, and ended up getting sued and paying extra-contractual damages as a result.

### The Underlying Bad Faith Insurance Lawsuit Against AmGuard by the Condo Association

The underlying lawsuit by the Condo Association against AmGuard was referenced in AmGuard's First Amended Complaint, *see* Dkt. #25 ¶ 41; ¶ 51(d); ¶ 61(d), and a copy of the Condo Association's complaint against AmGuard was provided in connection with the Motion to Dismiss briefing. *See* Dkt. #32-1. Because the underlying lawsuit was referenced in the First Amended Complaint, the Court can consider it in deciding a Rule 12(b) motion to dismiss without converting the motion to a summary judgment motion. *See GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) (recognizing that if a document is referenced in and central to a complaint, a court need not convert the motion but may consider that document on a motion to dismiss). That underlying complaint, captioned *The LaGrange Condominium*

*Association v. AmGuard Insurance Company*, Case No. 2021cv30417, was filed on

June 7, 2021 in the District Court for Larimer County, Colorado, and alleged that

AmGuard had acknowledged and agreed that the cost to restore the damaged property

to its pre-loss condition exceeded $1 million, that the work to restore the property had

been completed, and that the Condo Association had requested release of depreciation

on multiple occasions but AmGuard refused to pay. Dkt. #31-1 at 5.

In the underlying suit, the Condo Association brought claims against AmGuard

for breach of the insurance contract and bad faith breach of contract for, among other

things, unreasonably failing to pay the Condo Association's depreciation, failing to make

payments in a reasonable and timely manner, refusing to pay claims without conducting

a reasonable investigation based on available information, and delaying investigations

of discrepancies and claims brought to AmGuard's attention by the Condo Association

and its representatives.

The Condo Association also brought a claim for statutory bad faith against

AmGuard under Colorado's insurance bad faith statutes, Colo. Rev. Stat. §§ 10-3-1115

and 10-3-1116. These statutes impose liability for denial or delay of a payment on a

claim without a reasonable basis. A first-party claimant whose claim has been

unreasonably delayed or denied is entitled to recover reasonable attorneys' fees and

court costs, as well as two times the covered benefit. *See* Colo. Rev. Stat. § 10-3-1116.

**AmGuard's Claims against HAAG and Plasters**

AmGuard's Amended Complaint brings four discrete claims.

**Count I** asserts professional negligence against both HAAG and Plasters.

AmGuard alleges that Plasters and HAAG had a "duty to act in accordance with good

construction, insurance, and industry practices." Dkt. #25 ¶ 60. Plasters and HAAG

allegedly breached these duties by, among other things:

- Failing to timely conduct the inspection and estimate;

- Failing to keep AmGuard informed of their progress with the inspection and estimate;

- Failing to timely provide AmGuard with estimates after their initial inspection of the property;

- Failing to timely address AmGuard's requests to make corrections to their initial estimate;

- Failing to timely respond to repeated requests by AmGuard and the Condo Association to address discrepancies in its estimate;

- Falsely representing to the Condo Association that a supplemental estimate had been completed;

- Improperly managing the file;

- Failing to put policies in place to manage its employees and/or construction consultants in properly responding to and managing tasks and files;

- Failing to enforce policies to manage its employees and/or construction consultants in properly responding to and managing tasks and files;

- Failing to train its employees and/or construction consultants to properly respond to and manage files;

- Failing to ensure that Plasters completed all the tasks assigned to him by HAAG and AmGuard; and

- Failing to properly supervise Plasters.

*Id.* ¶¶ 59–60. AmGuard claims that these are breaches of duty independent from any contractual relationship between HAAG and AmGuard.

**Count II** asserts negligent misrepresentation against both HAAG and Plasters. AmGuard alleges that Plasters made the following false and misleading statements on which AmGuard relied to its detriment:

- On March 4, 2020, Plasters falsely stated that he was "near completion" with the initial estimate when in fact, he did not complete it until 21 days later;

- On January 8, 2021, Plasters falsely stated that he had completed the supplemental estimate when he had not started the supplemental estimate and did not start it until over seven months later.

AmGuard claims that it reasonably relied on these statements in "handling, evaluating, and adjusting the Claim and issuing payment on the Claim." *Id.* ¶ 74.

**Count III** asserts a claim for "Negligent Representation: Inducement Against Defendant H[AAG]." The allegation is that prior to accepting the assignment, HAAG represented to AmGuard that it would provide expert construction consulting services in a professional and timely manner. AmGuard asserts it reasonably and justifiably relied on these representations. It is alleged that in fact, HAAG did not have policies and procedures in place to ensure that it could provide the promised services in a professional competent manner.

**Count IV** is a breach of contract claim against HAAG for breach of the duty of good faith and fair dealing. Count IV is pled in the alternative, in the event there is found to be a written or oral contract between HAAG and AmGuard. Under the breach of contract claim, it is alleged that AmGuard and HAAG entered into a contract and

agreement pursuant to which HAAG agreed to inspect the loss at the Condo

Association property and to provide estimating services. This agreement was evidenced

by HAAG sending an engagement letter acknowledging the assignment and detailing

terms of how HAAG was to be paid and for what services it would bill. AmGuard says it

complied with the agreement in all material respects. Implied in this agreement was the

duty of good faith which Amguard asserts includes the obligation on both parties to not

act dishonestly or to act outside of accepted commercial practices to deprive the other

party of the benefit of the contract. *Id.* ¶¶ 88–98.

### HAAG and Plasters' Motions to Dismiss

HAAG moves to dismiss under Rule 12(b)(1) and Rule 12(b)(6) of the Federal

Rules of Civil Procedure. Under Rule 12(b)(1), which is a jurisdictional challenge, HAAG

claims AmGuard lacks standing to bring suit because AmGuard cannot plausibly allege

that HAAG's conduct was in any way the legal cause of AmGuard's breach of its own

legal duties to its insured. HAAG makes the same argument under Rule 12(b)(6),

alleging that AmGuard offers "mere speculations or possibilities" that HAAG's alleged

failure to respond timely to the AmGuard adjuster and provide the requested estimates

(or updates) was somehow the cause of AmGuard's own failure to respond to the

Condo Association's proofs of loss and failure to release depreciation to the Condo

Association for its actual repairs.

For its causation arguments, HAAG relies in large part on the case of *Skillett v.*

*Allstate Fire and Casualty Insurance Co.*, 505 P.3d 664 (Co. 2022). In *Skillett,* the

Colorado Supreme Court held that a statutory action for unreasonably delayed or

denied insurance benefits under Colorado law could only be brought against an insurer,

not against an individual adjuster employee of the insurer. Under Colorado law, individual adjusters are not personally subject to suit under the statutes in question, in part because an individual employee of the insurer is not responsible for authorizing payment—the insurer does that. The insurer is the party to the insurance policy with the insured and the insurer who undertakes the obligations to pay insurance benefits. 505 P.3d at 667.

From this legal reality, HAAG argues that it could not have been the cause of AmGuard's bad faith liability to its insured because, as a matter of law, it was AmGuard who had the obligation to the insured. And it was only AmGuard, the insurer, who could make a coverage determination and authorize or deny payment. For these reasons, HAAG asserts that AmGuard has not pleaded sufficient facts to demonstrate a causal connection between AmGuard's injury (expenses or damages from the bad faith lawsuit) and HAAG's or Plasters' conduct.

Plasters makes essentially the same lack of causation arguments as HAAG in moving to dismiss under Rules 12(b)(1) and 12(b)(6). Plasters also argues that he cannot be responsible for professional negligence for his actions as a construction consultant employee with HAAG. Plasters insists that as a damage inspector and estimator, he is not bound to any particular professional standard that could subject him to the equivalent of a professional malpractice claim. According to Plasters, there "is no Colorado case law concluding that cost estimating or construction consulting are jobs accompanied by an independent standard of care." Dkt. #33 at 7. For that reason, Plasters argues that the claim of professional negligence against him should be dismissed.

AmGuard, for its part, emphasizes that this is only the pleading stage of the case and, importantly, that it is not seeking to hold HAAG or Plasters *directly* responsible for the statutory violations it was accused of in the underlying lawsuit. Instead, AmGuard argues that it was HAAG and Plasters' respective failures to fulfil their own contractual or professional duties to AmGuard that were the cause (or *a* cause) of AmGuard's inability to fulfil its obligations to its insured, resulting in the underlying lawsuit and AmGuard's extra-contractual liability to its insured. Put very simply, AmGuard says that Defendants' failures "prevented [AmGuard] from achieving a timely resolution of the claim," and therefore AmGuard "was opened up to a bad faith lawsuit by its insured." Dkt. #36 at 1–2. This is all AmGuard says it needs to allege with respect to causation.

**Standards for Motions to Dismiss**

**Motion to Dismiss under Rule 12(b)(1)**

As noted above, Defendants move to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction. These types of motions generally take two forms: facial attacks or factual attacks. *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002). A facial attack questions the sufficiency of a complaint, and the allegations in the complaint are accepted as true. *Id.* In a factual attack, the movant goes beyond the allegations in the complaint and challenges the facts upon which subject-matter jurisdiction depends. In a factual attack, the Court must look beyond the complaint and has wide discretion to consider documentary and even testimonial evidence. *Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1324 (10th Cir. 2002).

In this case, Defendants launch a facial attack on Plaintiffs' First Amended Complaint, disputing whether it sufficiently alleges the causation required to establish

11

constitutional standing. The Court will therefore accept AmGuard's allegations as true when addressing this issue.

### Motion to Dismiss under Rule 12(b)(6)

Rule 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The *Iqbal* evaluation requires two prongs of analysis. First, the Court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 679–81. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 679.

However, the Court need not accept conclusory allegations without supporting factual averments. *S. Disposal, Inc., v. Tex. Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citation omitted).

## Analysis

### On the Question of Causation

The purported lack of causation is a focus of both the Rule 12(b)(1) and 12(b)(6) challenges to AmGuard's First Amended Complaint. AmGuard responds that under the notice pleading requirements of the federal rules, it has sufficiently alleged that HAAG and Plasters' repeated delays and misstatements caused AmGaurd to fail to respond promptly to its own insured, resulting in a lawsuit and extra-contractual liability under Colorado's bad faith insurance statutes. AmGuard distinguishes the *Skillett* case by acknowledging that an individual adjuster or estimator (like Plasters), or estimation company (like HAAG), cannot be liable for insurance bad faith. But AmGuard says it is not seeking to hold Plasters and HAAG liable for insurance bad faith, or for any breach of any duty *to the insured*. Instead, AmGaurd is alleging that HAAG and Plasters, by

13

their delay, negligence, and misrepresentations, interfered with AmGuard's ability to properly and timely adjust the claim, including the ability to decide to authorize payment.

I agree with AmGuard that, at this early stage, its allegations are sufficient to allege causation for Article III standing purposes, and are also sufficient to allege the causation element of the breach of contract, negligence, and negligent representation claims. The principle of causation for constitutional standing requires a plaintiff's injury to be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1156 (10th Cir.2005) (internal quotation marks omitted and emphasis added) (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992)). Although a defendant's alleged misconduct need not be the proximate cause of a plaintiff's harm, "Article III does at least require proof of a substantial likelihood that the defendant's conduct caused plaintiff's injury in fact." *Id.*

Here, it is alleged that Defendants' failures to provide (or provide within a reasonable time) an estimate or otherwise respond to AmGuard and the Condo Association's requests for updates resulted in AmGuard being unable to fulfill its own contractual and statutory obligations to its insured. Thus, as alleged, AmGuard's injury can be "fairly traceable" to Defendants' alleged misconduct, satisfying the causation requirement for constitutional standing and as an element of the tort claims asserted.

### Plaintiff Fails to State a Claim for Professional Negligence

With respect to the claim for professional negligence against HAAG and Plasters, AmGuard alleges that Defendants had a "duty to act in accordance with good construction, insurance, and industry practices." Dkt. 25 ¶ 60. Defendants argue that

14

AmGuard's claim for professional negligence should be dismissed because Defendants are not professionals who can be held to a professional standard of care. I agree.

Defendants rely on *Stan Clauson Associates, Inc v. Coleman Brothers Construction, LLC.*, 297 P.3d 1042 (Colo. App. 2013), which holds that, in Colorado, a land planner cannot be held to an independent professional duty of care. The *Clauson* decision was based on Colorado's version of the economic loss doctrine, which is intended to preserve the boundary between contract and tort law. Under the economic loss rule, "a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law." *Town of Alma v. AZCO Constr., Inc.*, 10 P.3d 1256, 1264 (Colo.2000). In *Town of Alma*, the Colorado Supreme Court distinguished between duties owed under contract law and tort law. The focus on duty is paramount because "the relationship between the type of damages suffered and the availability of a tort action is inexact at best." *Id.* at 1263.

"If the alleged duty exists under the contract and the alleged breach would constitute a material breach of the contract, the economic loss rule bars the tort claim. If the alleged duty exists independent of the contract and would not constitute a material breach of the contract, the rule does not bar the tort claim." *Clausen*, 297 P.3d at 1045 (citing *A Good Time Rental, LLC v. First Am. Title Agency, Inc.*, 259 P.3d 534, 537 (Colo. App. 2011), *BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66, 74 (Colo. 2004), and *AZCO Constr., Inc.*, 10 P.3d at 1263)).

Here, AmGuard argues that there exists an independent duty on the part of HAAG and Plasters, as professional inspectors/estimators, imposing an independent

and separate duty of care beyond any contractual relationship. The argument

presumably is that, like a doctor or a lawyer, there is some independent professional

duty, beyond any contractual duty or duty imposed by a retainer agreement, that would

subject the professionals to a tort claim for malpractice (or negligence), beyond a

breach of contract.

As explained in *Clausen*, professionals are held to duties and standards of care

independent of those established by the contract for their services. Professional

standards of care reflect the policy that members of professions must do their work not

just reasonably well, but rather "in a manner consistent with members of the profession

in good standing." 297 P.3d at 1045 (quoting *Command Commc'ns, Inc. v. Fritz Cos.*,

36 P.3d 182, 189 (Colo. App. 2001). If a contract for professional services does not

explicitly adopt the professional standard of care, and Colorado law identifies the

service provider as a professional, then fulfillment of the professional standard of care is

a duty that is independent of the services agreement and the economic loss rule will not

bar a claim for breach of the professional duty. *Id.*; *see also BRW, Inc.*, 99 P.3d at 74

(economic loss rule barred professional tort claim where contract explicitly adopted the

"usual and customary professional standards [of care]").

In *Clausen*, the court found that no Colorado case had previously held a land

planner to a professional standard of care. In addition, the court noted that a land

planner is not among those many service providers regulated through certification by

the state, listed in title 12 of the Colorado Revised Statutes. *Clausen*, 297 P.3d at 1045;

*see also* Colo. Rev. Stat. §§ 12-1.5-101 to 12-71-104. These include, for example,

accountants, attorneys, electricians, engineers, surveyors, architects, certain health

care professionals, real estate brokers, and veterinarians, all of which are regulated by the state through licensing and certification. *See, e.g.*, Colo. Rev. Stat. § 12–2–101.

In deciding whether to recognize the existence of a common law duty, courts consider the risk involved, the foreseeability and likelihood of injury as weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against injury or harm, and the consequences of placing the burden upon the actor. *Clausen*, 297 P.3d at 1046.

In *Clausen*, the court found that land planning is not a profession that is held to an independent duty or standard of care under any Colorado statute. Nor have land planners been held to such a duty or standard at common law in Colorado. *Id*. at 1047. The *Clausen* court also considered the economic risks involved in land planning, the foreseeability and likelihood of economic loss, the burden on the developer to guard against the risks and possible loss, the consequences of placing the burden on land planners. *Id*. Considering all those factors, the court declined to recognize an independent professional duty of care for land planners. *Id*.

All these same points could be said for construction consultants engaged as insurance damage estimators. There is no Colorado case law concluding that cost estimating or construction consulting are jobs associated with an independent duty of care. Title Twelve of the Colorado Revised Statutes does not list construction consultants or construction cost estimators as professionals. Here, the alleged breach of duty was the failure to act promptly to provide the requested estimates and revisions within a reasonable amount of time. There is nothing particularly special or "professional" about the need to perform a contracted task on time or be responsive to

17

the client. To the extent the contract between HAAG and AmGuard carried an implied

duty to perform the contract in a reasonably timely way, then the damage from the

alleged professional negligence is the same as the damage from HAAG's alleged

breach of contract—AmGuard was unable to timely adjust (and presumably pay out) the

claim and was itself sued as a consequence.

AmGuard insists that at the motion to dismiss stage, "all factual allegations must

be taken as true and construed in the light most favorable to the Plaintiff, including that

the Defendants should be held to a professional standard of care," because they

"operated as an engineering/construction consulting firm with an emphasis on handling

insurance claims, and had a duty to act in accordance with good construction, insurance

and industry practices." Dkt. #36 at 6–7. But this is a conclusory assertion that need not

be presumed true for purposes of a motion to dismiss. *Iqbal*, 556 U.S. at 678.

The Court declines to recognize an independent professional duty of care on the

part of insurance damage estimators. The claim for professional negligence should

therefore be dismissed.

**Claims for Negligent Misrepresentation and Negligence Inducement**

Other than raising the issue of causation (or lack thereof), which the Court

addressed above, Defendants do not separately challenge the negligent

misrepresentation or negligent inducement claims. The Court is skeptical that mere

negligent representations in the performance of a contract (such as falsely saying, "I will

get the job done"), or negligent representations causing someone to enter into a

contract that is ultimately not performed in a manner consistent with those

representations, constitutes a valid cause of action separate and distinct from the

breach of contract. After all, a contract for services is a promise to perform that service. Absent an allegation of fraud, it would seem that the damages from the contractual breach would be identical to the damages from false representation that the contract will be performed in a timely way. But, because the Defendants do not separately challenge the negligent misrepresentation and negligent inducement claims (other than on the grounds of lack of causation), the Court will allow those claims to survive for now.

### Conclusion

For the foregoing reasons, Defendants' Motions to Dismiss (Dkts. #32 and #33) are **GRANTED IN PART** and **DENIED IN PART.** AmGuard's claim for professional negligence is **DISMISSED**. Defendants' motions are otherwise **DENIED**.

The Parties are instructed to contact the Court's chambers within two days to set a status conference to discuss the issue of the timing of expert disclosures.

Date: October 4, 2023

_____
N. Reid Neureiter
United States Magistrate Judge

19